UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONJA SHER, by and through her power of attorney, Teresa Fiss,<br><br>Plaintiff,<br><br>v.<br><br>EVERBRIGT, LLC,<br><br>Defendant. | No. 1:26-cv-04646-KES-FJS<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Doc. 6 |

Before the Court is defendant EverBright, LLC's ("defendant" or "EverBright") motion to compel arbitration and stay proceedings pending completion of the arbitration. Doc. 6. For the reasons discussed below, this motion is DENIED.

## I. BACKGROUND

The factual allegations are drawn from Sonja Sher's ("plaintiff" or "Sher") complaint. EverBright is a financial technology company that supplies "clean" power. Doc. 1 at ¶ 1. Using financing options including leases and power purchase agreements ("PPA"), EverBright contracts with consumers to install solar panel systems on consumers' homes. *Id.* at ¶¶ 16–18. Sher alleges that "[u]nder the PPAs, the consumer commits to paying a certain per kilowatt-hour (kWh) amount for the electricity that the panels generate. EverBright advertises the kWh price as being lower than the local utility's rate—however, EverBright increases the cost each year at a

rate untethered to inflation or the cost of electricity from other sources." *Id.* at ¶ 19.

At the time of the alleged transaction between Sher and EverBright, Sher was 77 years old. *Id.* at ¶ 34. Sher alleges that in 2019, she was "diagnosed with mild cognitive impairment, which progressively worsened to dementia by 2023." *Id.* Due to this cognitive decline, Sher "has little recollection" of the alleged transaction. *Id.* at ¶ 36. Sher alleges though that, in or around May 2023, "an unregistered salesperson, an agent of EverBright . . . came to [Sher's] house unannounced to sell her solar panels." *Id.* The salesperson was allegedly acting on behalf of one of EverBright's partners, Levion Construction LLC ("Levion"). *Id.* Sher "does not believe she received any paperwork concerning any alleged transaction." *Id.* at ¶ 37. But "[t]hereafter, solar panels were placed on [her] roof." *Id.*

After Sher's husband died, Sher's daughter, Teresa Fiss ("Fiss"), began helping Sher with her finances. *Id.* at ¶ 39. While going through paperwork, Fiss discovered bills from EverBright. *Id.* After Fiss contacted EverBright, EverBright sent her a copy of an EverBright PPA that Sher had purportedly signed. *Id.* at ¶¶ 39–40. Sher alleges that "[t]his was the first time that [Sher], or anyone in her family, had seen a copy of the purported EverBright PPA." *Id.* at ¶ 40. The email address that the PPA listed, blauschimmer@gmail.com, "is not Sher's email address" and Sher does not "have access to that email address." *Id.*

The purported agreement "states that it is for a 25-year PPA with monthly payments increasing yearly, ultimately to $784.98 per month." *Id.* "[U]nbeknownst to [Sher], her account had been set up for autopay and EverBright was deducting monthly payments from [her] account." *Id.* The PPA also includes "an EverBright-branded Solar Installation Agreement that was purportedly signed by Plaintiff using the blauschimmmer@gmail email address." *Id.* at ¶ 41. Sher's "account was eventually sent to a debt collector . . . for servicing." *Id.* at ¶ 43.

On or around April 15, 2026, Sher sent letters to EverBright which "again notified EverBright of the fraud" and "also cancelled and rescinded any and all alleged contracts between [Sher] and EverBright." *Id.* at ¶ 44. EverBright however "refuses to acknowledge the lawful rescission and has declined to take any corrective action." *Id.* at ¶ 45. EverBright continues to claim that Sher is contractually bound. *Id.* at ¶ 46.

On June 16, 2026, Sher filed a complaint against EverBright for: (I) violations of the Rosenthal Fair Debt Collection Practices Act, Cal. Civil Code § 1788, *et seq.*, (II) violation of the Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welf. & Inst. Code. § 15600, *et seq.*, (III) violations of the Home Solicitation Sales Act, Cal. Civil Code § 1689.5, *et seq.*, (IV) slander of title, and (V) violations of California's Business and Professions Code § 17200, *et seq.* *Id.* at ¶¶ 50–120.[1]

On July 23, 2026, EverBright moved to compel arbitration and stay proceedings until arbitration is completed. Doc. 6. To support its motion, EverBright submitted a declaration of Cassandra Mercado ("Mercado"), the manager of customer advocacy at EverBright, Doc. 6-2 at ¶ 1, as well as attached exhibits. EverBright also submitted a declaration of its attorney, Julia M. Beckley ("Beckley"). Doc. 6-6 at ¶ 1.

EverBright argues that the PPA included a mandatory arbitration clause. Doc. 6-1 at 5–6; Doc. 6-2 at ¶¶ 6, 9. The PPA provided for arbitration of "all related disputes, claims and counterclaims arising out of or relating to this Agreement." Doc. 6-1 at 6; Doc 6-3 at 15. It further provided, in capitalized font:

> TO THE EXTENT PERMITTED BY LAW, YOU AGREE THAT, BY ENTERING INTO THIS AGREEMENT, YOU AND WE ARE AGREEING TO HAVE DISPUTES DECIDED BY AN ARBITRATOR AND ARE WAIVING THE RIGHT TO A TRIAL IN COURT OR BY A JURY.

Doc. 6-1 at 6; Doc 6-3 at 15.

The PPA also provided, in bolded and capitalized font:

> **YOU UNDERSTAND THAT YOU ARE VOLUNTARILY AGREEING TO ARBITRATE DISPUTES ARISING UNDER THE AGREEMENT AND AUTHORIZE THAT YOU HAVE REVIEWED THIS SECTION AND AGREE TO ITS PROVISIONS.**

Doc. 6-3 at 15. The PPA additionally provided that "the Federal Arbitration Act ["FAA"] governs our agreement to arbitrate" and that, if the parties are unable to resolve a dispute, "either

---

[1] The parties filed a stipulation for dismissal of the fourth cause of action (slander of title) with prejudice. Doc. 16. Magistrate Judge Frank J. Singer ordered that Sher's complaint be deemed amended to dismiss the fourth cause of action. Doc. 18 at 2.

party may commence an arbitration proceeding with the American Arbitration Association." Doc 6-3 at 14–15.

EverBright argues that Sher assented to the PPA. Doc. 6-1 at 5–7, 11. Mercado declares that Sher and EverBright entered into the PPA on May 26, 2023. Doc. 6-2 at ¶ 6. Mercado alleges that both parties signed through DocuSign, "a third-party digital transaction vendor that utilizes security procedures to verify the identity of the signatories," and that Sher initialed under the bolded and capitalized arbitration provision. *Id*. at ¶¶ 6–7, 10. "DocuSign creates certificates for transactions that memorialize, among other things, whom the transacting parties were and what security procedures were in place to confirm the identity of the party whose signature was requested." *Id.* at ¶ 8.

EverBright submitted a copy of the PPA, which includes a computer generated signature of "Sonja Sher." Doc. 6-3 at 4. The initials "S S," likewise computer generated, also appear on multiple pages of the agreement. *See id.* at 15–17. "Sonja Sher" is listed as the property owner, *id.* at 4, but "blauschimmer@gmail.com" is listed as the customer's email address. *Id.* at 2. EverBright also submitted a DocuSign certificate, dated May 26, 2023, that includes an identical computer generated signature in the name of "Sonja Sher." Doc. 6-4 at 1. On the DocuSign certificate, the email address for the signatory is likewise "blauschimmer@gmail.com." *Id.*

EverBright also argues that Sher manifested assent to the agreement because for over two years monthly autopayments were withdrawn from her bank account to pay EverBright. Doc. 6-1 at 7, 11; Doc. 6-2 at ¶ 13. EverBright submitted a document titled "Account Payment History" that lists the payments over the course of about two years. Doc. 6-5 at 1. This document includes information about each payment including the payment method and who it was "[p]aid [b]y." *Id.* "Sonja Sher" is listed as the payor for each payment. *Id.*

EverBright argues that Sher assented to a valid and enforceable arbitration agreement that covers this dispute, that the parties delegated all questions to the arbitrator, and that the Court should therefore compel arbitration and stay proceedings. Doc. 6-1 at 5, 9–15. Alternatively, if there is insufficient evidence to resolve the motion, EverBright requests an evidentiary hearing. *Id.* at 15.

In her opposition to EverBright's motion to compel, Sher argues that the motion should be denied, and in the alternative requests a jury trial on the issue of contract formation. Doc. 9 at 4. Based on evidentiary submissions including the declarations of Sher's daughter, Fiss, and of Kristin Kemnitzer ("Kemnitzer"), an attorney for Sher, Docs. 9-1, 9-2, Sher argues that there is a lack of evidence of an agreement between the parties. Doc. 9 at 4, 12–17. Sher describes the PPA as "procured by fraud," obtained through "fraud in the execution," and "void *ab initio*." Doc. 9 at 14, 17. In support of this, Fiss declares that, prior to Fiss finding an EverBright bill, Sher had never heard of EverBright and had never mentioned solar panels or any associated contract to Fiss. Doc. 9-1 at ¶¶ 7–8. Fiss discovered that "EverBright was withdrawing automatic monthly payments from [Sher's] bank account" though Sher "did not know this was happening." *Id.* at ¶ 9. It was only after requesting the PPA from EverBright that Sher or anyone in her family saw it. *Id.* at ¶ 10. Fiss further declares that, to her knowledge, Sher has never used DocuSign or any other electronic signature platform and would have needed assistance to figure out how to use an electronic platform like DocuSign. *Id.* at ¶ 11

Fiss declares that she never heard of the email address blauschimmer@gmail.com and has no recollection of her mother ever using it. *Id.* at ¶¶ 11, 14. And upon reviewing the email address's subscriber information, which Sher obtained from Google LLC, Doc. 9-2 at ¶¶ 5–6, Fiss found that the subscriber information lists the birthday of the subscriber as December 1, 1982, which is not Sher's birthday. Doc. 9-1 at ¶ 15; Doc. 9-2 at 34. Additionally, the subscriber information lists the email's recovery email as jaysonfennimore@gmail.com. *Id.* at ¶ 16; Doc. 9-2 at 34. Fiss has likewise "never heard of anyone named Jayson Fennimore" or this email address. Doc. 9-1 at ¶ 16. Further, the subscriber information lists a phone number that Fiss had never heard of and that has never been associated with Sher. *Id.* at ¶ 17. The phone number's area code, 510, is associated with the East Bay region of the San Francisco Bay Area, an area where Sher has never lived. *Id.*

On July 28, 2026, Kemnitzer called the number listed on the subscriber information for the email address blauschimmer@gmail.com. Doc. 9-2 at ¶ 11. A man answered the phone and identified himself as Jayson Fennimore. *Id.* Kemnitzer identified herself as Sher's attorney and

asked if Mr. Fennimore was represented by an attorney. *Id.* He said he was not but refused to answer any further questions. *Id.*

Kemnitzer also declares that when speaking to Beckley, EverBright's attorney, Beckley noted that there existed a telephone recording in which someone purporting to be Sher spoke with an EverBright representative about the alleged PPA. *Id.* at ¶ 4. Though Kemnitzer requested a copy of the recording, "EverBright stated that it would not produce the purported phone recording." *Id.* EverBright has not produced this alleged recording.

On August 17, 2026, EverBright submitted a reply in support of its motion to compel, maintaining that the evidence shows that Sher executed the PPA and the arbitration agreement, and that it has adequately supported the existence of a valid and enforceable contract and arbitration agreement. Doc. 14 at 4, 13. It points out that the subscriber information submitted for the email address "blauschimmer@gmail.com" lists the name for the email address as "S S." *Id.* at 12; 9-2 at 34. EverBright acknowledges that it has refused to produce the purported phone conversation with Sher, but it states that "EverBright is not obligated to produce any and all additional evidence which supports the original agreement to arbitrate." Doc. 14 at 13 n.2.

## II. LEGAL STANDARD

### A. <u>Motion to Compel Arbitration</u>

Under the FAA, written provisions in any contract "evidencing a transaction involving commerce" to settle disputes arising out of such contract by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision is "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court for an order compelling arbitration. *See* § 4.

Still, "[i]t is axiomatic that '[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *Sanford v. MemberWorks,*

*Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)).

The Ninth Circuit has interpreted FAA section four to mean that "challenges to the *existence* of a contract as a whole, must be determined by the court prior to ordering arbitration." *Sanford*, 483 F.3d at 962; *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1226–27 (9th Cir. 2022) ("'[I]t is . . . well settled that where the dispute at issue concerns contract formation, the dispute is generally for the courts to decide.'" (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)). Such challenges are distinct from challenges to "the contract's validity," which are "considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006). "To take the question of contract formation away from the courts would essentially force parties into arbitration when the parties dispute whether they ever consented to arbitrate anything in the first place." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) (internal citation omitted). Whether there is a contract depends on state law principles of contract formation. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014); *Reichert*, 56 F.4th at 1227.

A party may demand a jury trial concerning this issue. 9 U.S.C. § 4. To decide whether the issue must be sent to the jury, courts have "rel[ied] on the summary judgment standard." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). This standard is "appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Id.* (internal citation omitted). To prevail under the summary judgment standard, the party seeking arbitration, or the party opposing the motion to compel arbitration, "must show there is no genuine issue as to any material fact regarding the formation of the arbitration contract." *Singh v. Adobe Inc.*, 797 F. Supp. 3d 1038, 1044 (N.D. Cal. 2025).

"A material fact is one that may affect the outcome of the case under the applicable law." *Walsh v. Tehachapi Unified School Dist.*, 997 F. Supp. 2d 1071, 1077 (E.D. Cal. 2014). "A dispute is genuine 'if the evidence is such that a reasonable trier of fact could return a verdict in favor'" of the opposing party. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).

"[T]he party seeking to compel arbitration . . . has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "A defendant may meet its initial burden . . . merely by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature to the motion to compel arbitration." *Zamudio v. Aerotek, Inc.*, 733 F. Supp. 3d 931, 938 (E.D. Cal. 2024) (internal citation omitted). "However, if a plaintiff challenges the validity of that signature, a defendant is then required to establish by a preponderance of the evidence that the signature is authentic." *Id.* (internal citation omitted). When deciding a motion to compel arbitration, the court evaluates "all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." *Lewis v. Regions Bank*, 832 F. Supp. 3d 1063, 1069 (E.D. Cal. 2026) (internal citation omitted). "When determining if a genuine factual issue . . . exists . . . a trial judge must bear in mind the actual quantum and quality of proof necessary" to succeed. *Anderson*, 477 U.S. at 254.

### B. <u>Motion to Stay Pending Completion of Arbitration</u>

Under FAA section 3 "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration," the district court is "compel[led] . . . to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); 9 U.S.C. § 3.

## III. DISCUSSION

Sher challenges the existence of the contract. As Sher has established that there is no genuine issue of material fact as to whether the parties mutually agreed on a contract, and she has established that she did not enter into the PPA, the motion to compel arbitration and stay proceedings is denied.

### A. <u>Challenge to the Existence of the Contract</u>

The nature of Sher's challenge determines whether it is a matter for the court or arbitrator. A challenge to mutual assent is a challenge to the existence of the contract that is properly before the court, as a necessary requirement of contract formation under California law is manifestation of mutual assent. *Hooper v. Jerry Ins. Agency, LLC*, 675 F. Supp. 3d 1027, 1034 (N.D. Cal.

2023); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023); *see also* Restatement (Second) of Contracts § 18 (characterizing mutual assent as a formation issue)). Sher argues that there was no mutual assent. Specifically, she disputes that she executed the PPA or created the electronic signature on the PPA. Doc 9 at 12–14. This constitutes a challenge to the existence of the contract.

To the extent Sher argues that EverBright's contact was "fraudulent" and "procured by fraud," Doc. 9 at 11, 14, this is likewise a challenge to the formation of the contract. Under California law, a challenge of fraud in the execution is a claim "that the promisor [was] deceived as to the nature of his act, and actually [did] not know what he . . . sign[ed], or [did] not intend to enter into a contract at all." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996) (internal citation omitted). Sher makes a challenge of fraud in the execution. Sher argues that because she did not actually sign the agreement, the contract was "procured by fraud" and is "void *ab initio*." Doc. 9 at 13–15. Towards the end of her brief, she also explicitly refers to her challenge as one of "fraud in the execution." *Id.* at 17.

A challenge of fraud in the execution establishes a dispute as to contract formation. California law recognizes that a claim of fraud in the execution is a challenge to mutual assent. *Rosenthal*, 14 Cal. 4th at 415 (noting that when there is fraud in the execution "mutual assent is lacking, and [the contract] is *void*" (internal citation omitted)). Numerous courts have determined that "fraud in the execution . . . goes to contract formation [and] is appropriately resolved by the Court rather than the arbitrator." *Jeppesen v. Cramer*, No. 2:25-cv-05895-AH-(JPRx), 2026 WL 1455350, at *4 (C.D. Cal. Apr. 17, 2026) (applying California law); *Porter v. Loyalty Mortg., Inc.*, No. 07CV1930 JLS (BLM), 2008 WL 11509118 at *2 n.3 (S.D. Cal. Jan. 18, 2008); *Scilex Holding Co. v. Wade*, No. 8:26-cv-550-JVS-ADS, 2026 WL 2435450, at *4 (C.D. Cal. Aug. 19, 2026).[2]

---

[2] Principles of contract law support this approach. Whether or not there is mutual assent is a question of contract formation. *See* Restatement (Second) Contracts § 18. If one claims one was deceived as to what one was doing—a challenge of fraud in the execution—this is substantively similar to claiming that one did not intend to engage in the conduct that purportedly binds one—a requirement of mutual assent. *Id.* § 19(2).

As Sher challenges the existence of the contract, she presents a question for the court.

**B. <u>No Genuine Dispute of Material Fact</u>**

Because Sher disputes whether the parties formed a contract, it is necessary to decide whether there is a genuine issue of material fact. *See Hansen*, 1 F.4th at 670. Sher's challenge to mutual assent presents a factual question. *See Martinez v. BaronHR, Inc.*, 51 Cal. App. 5th 962, 966 (Cal. Ct. App. 2020).

Sher has shown that there is no genuine dispute of material fact as to the existence of the contract. Though EverBright submitted a PPA that bears Sher's name along with a purported DocuSign certificate, Sher's evidence establishes that she did not sign or enter into the PPA. The email address on the PPA and DocuSign certificate, "blauschimmer@gmail.com," does not belong to Sher, and the birthday and phone number associated with this email address likewise do not match Sher's personal information. Doc. 9-1 at ¶¶ 11, 14–15, 17. EverBright argues that the Google subscriber information lists the subscriber's name as "S S," Doc. 14 at 12, but there is no evidence that Sher ever had any access to, or custody or control over, the "blauschimmer" email account, which is not in her name and is linked to a phone number with no connection to Sher. Sher's filings establish that she was an elderly person with cognitive decline, who did not know how to use DocuSign and would have needed assistance even to use an electronic signature platform. *Id.* at ¶ 11. In response, EverBright offers no explanation for why the information associated with the alleged signatory fails to match Sher's information. The record shows that EverBright claims to have recordings of someone purporting to be Sher, but EverBright has declined to produce that recording. *See* Doc. 9-2 at ¶ 4; Doc. 14 at 13 n.2.

Nor is there any other evidence that Sher signed the PPA. Mercado's conclusory declaration does not create a material dispute of fact on this issue. *See Indep. Cellular Telephone, Inc. v. Daniels & Assocs.*, 863 F. Supp. 1109, 1114 (N.D. Cal. 1994); *Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Though Mercardo declares, in conclusory fashion, that "[o]n May 26, 2023, Plaintiff and EverBright entered into the [PPA]," Doc. 6-2 at ¶ 6, EverBright did not submit a declaration from anyone who purports to have interacted with Sher concerning the PPA. It provides no declaration from any alleged

salesperson.

The record of Sher's payments to EverBright also does not create a genuine issue of material fact as to the existence of the contract. Under California law, "[c]ourts use objective criteria to determine whether mutual assent exists, the test being what the outward manifestations of consent would lead a reasonable person to believe." *Siert v. Spiffy Franchising, LLC*, 758 F. Supp. 3d 1142, 1147 (N.D. Cal. 2024) (quoting *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (Cal. Ct. App. 1998)). To establish assent by conduct, "the party must intend the conduct and know, or have reason to know, the other party may infer her assent from the conduct." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) (applying California law); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (same). As the plaintiff has shown that Sher did not sign or receive the PPA, the autopayments from her bank account cannot be understood as a manifestation of mutual assent to enter into the PPA or arbitrate. *See* Doc. 9-1 at ¶¶ 8–10. In these circumstances, a reasonable person or business receiving the autopayments would not believe that they somehow manifested assent to the PPA.

**C. <u>Stay</u>**

As the motion to compel arbitration must be denied, there is no basis to stay the proceedings.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, EverBright's motion to compel arbitration and stay proceedings is DENIED.

IT IS SO ORDERED.

Dated: September 10, 2026

UNITED STATES DISTRICT JUDGE